1  Kevin W. Coleman (SB 168538)
   Christopher H. Hart (SB 184117)
2  Gregory C. Nuti (SB 151754)
   NUTI HART LLP
3  411 30TH Street, Suite 408
   Oakland, CA 94609-3311
4  Telephone: 510-506-7152
   Email: kcoleman@nutihart.com
5          chart@nutihart.com
           gnuti@nutihart.com
6

7  Counsel for Kavita Gupta,
   Chapter 11 Trustee
8

9              UNITED STATES BANKRUPTCY COURT

10                    DISTRICT OF NEVADA

| | |
|---|---|
| 11 In re: | Case No.: BK-S-18-12454 LEB |
| 12 DESERT LAND, LLC | Chapter 11 |
| 13           Debtor. | |
| In re: | Case No.: BK-S-18-12456 LEB |
| 14 DESERT OASIS APARTMENTS, LLC, | Chapter 11 |
| 15           Debtor. | |
| 16 In re: | Case No.: BK-S-18-12457 LEB |
| 17 DESERT OASIS INVESTMENTS, LLC, | Chapter 11 |
| 18           Debtor. | **CHAPTER 11 TRUSTEE KAVITA GUPTA'S MOTION TO APPROVE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS AND GRANT RELATED RELIEF** |
| 19 | |
| 20 | |
| 21 | Date:      May 19, 2020 |
| 22 | Time:      9:30 a.m. |
| | Judge:     Hon. Gary Spraker |

23        Kavita Gupta ("Trustee"), Chapter 11 trustee for the estates of Desert Land, LLC, Desert

24 Oasis Apartments, LLC, and Desert Investments, LLC (collectively, "Estates") hereby seeks an

25 order authorizing the sale of the Debtors' real property assets free and clear of the liens to the

26 bidder(s) presenting the highest and best bid(s) at the auction to be conducted on May 19, 2020

27 at 9:30 a.m. pursuant to the terms of this Court's Order (A) Approving Bidding Procedures and

28 Form of Purchase and Sale Agreement, (B) Setting Action Date and Sale Hearing; and (C)

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1   Granting Related Relief  ("Sale Procedures Order") [Doc. No. 972] (the "Sale Motion").[1]  In

2   support hereof, the Trustee states as follows:

3   **I.      FACTS**

4           The Debtors' real property assets have been extensively marketed for sale for more than a

5   year since the Trustee was appointed on April 3, 2019.  The facts concerning the marketing

6   process are detailed in the declarations of Matthew Bordwin [Doc. No. 1054, filed under seal]

7   and Kavita Gupta [Doc. No. 1055, filed under seal], which are incorporated herein.  Among

8   other things, the Debtors' property and the bid process was advertised in international, national,

9   and local publications, through proprietary databases maintained by the Trustee's brokers,

10  Colliers Nevada LLC dba International ("Colliers") and Keen-Summit Capital Partners LLC

11  ("Keen-Summit").  The Debtors' assets and the auction were the subject of multiple reports in

12  television and print media.  Colliers and Keen-Summit also did direct outreach aimed at:

- Casino owners and operators

- Resort hotel REITS

- Gaming REITS

- Opportunity Zone Funds

- Retail/shopping center developers

- Other entities that had expressed interest in the Debtors' properties during the prior listing agreement with Colliers

20          As a result of these efforts, by February 12, 2020, 165 entities had signed NDAs, and 34

21  potential bidders had downloaded at least 10 documents from the virtual data room.  By March 3,

22  2020, 214 entities had signed NDAs, and 53 had downloaded ten or more documents from the

23  data room.  As of April 13, 2020, 271 entities had signed NDAs, and 75 had downloaded 10 or

24  more documents from the data room.  As of the filing of this motion, multiple offers have been

26  _____

[1]      Under the terms of the Sale Procedures Order, this motion was originally to be filed on
27  April 14, 2020.  However, in the intervening period, certain parties filed a motion seeking
to suspend the bankruptcy cases or delay the auction [Doc. No. 1039].  In light of the
28  pendency of the joint motion, the parties stipulated to defer the deadline for filing this
motion to April 23, 2020, and for opposition(s) to be filed May 5, 2020.

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1    received, and the Trustee anticipates that additional offers from qualified bidders will be received

2    prior to the April 30, 2020 bid deadline.  The Trustee submits that the foregoing activities have

3    sufficiently exposed the Debtors' property to the market, and that the Debtors' assets have been

4    marketed for a reasonable amount of time.

5    **II.    ARGUMENT**

6        **A.  Sale is in the Best Interests of the Estate.**

7        Bankruptcy Code section 363(b) provides that, after notice and a hearing, the Court can

8    approve sale of property of the estate outside of the ordinary course of business.  11 U.S.C. §

9    363(b).

10       As set forth above, the Trustee extensively marketed the Debtors' assets both as a 38.5

11   acre assemblage ("Assemblage") and as individual lots specified in the Sale Procedures Order.

12   Bids have been tendered, and more are expected prior to the April 30 bid deadline.  All qualified

13   bidders (as defined in the Sale Procedures Order) will be entitled to participate in the auction.

14   Necessarily, the bidder(s) presenting the highest and best bid(s) for the Debtors assets at the

15   auction will establish the fair market value of those assets, and therefore, that such sale(s) is/are

16   in the best interests of the Debtors' estates.

17       **B.  The Sale Can Be Approved Free and Clear of Liens.**

18       Bankruptcy Code section 363(f) provides that property can be sold free and clear of liens

19   under various conditions, including:

20       a.    where the lender consents;

21       b.    the sale price exceeds the aggregate of all liens;

22       c.    the lien is in *bona fide* dispute; or

23       d.    the lender can be compelled to accept a money satisfaction of its interest through

24           a legal or equitable proceeding.

25   *See* 11 U.S.C. § 363(f)(2), (3), (4) & (5);  In re Gerwer, 898 F.2d 730, 733 (9th Cir. 1990)

26   (affirming sale where a *bona fide* dispute existed).

27   //

28

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1

### 1.      *Consent May Be Obtained by the Hearing*

2      As of the filing of this Motion, the Trustee has been in discussions with the holders of

3    alleged liens on the Debtors' assets – The Northern Trust Company, the Gonzales Trust, the

4    Shotgun Entities, DLLA/Aspen Creditors, and Juniper Loan Servicing – concerning the auction

5    and sale.  Those discussions are on-going, and the alleged lienholders may consent by the time of

6    the auction and hearing.  Moreover, the Court may deem an alleged liehholders' failure to object

7    to constitute consent to the sale.  In re Daufuskie Island Props. LLC, 431 B.R. 626, 640 (Bankr.

8    D.S.C. 2010).

9

### 2.      *The Liens Are Subject to Bona Fide Disputes*

10      The Court can authorize the sale free and clear of all liens because they are subject to

11    *bona fide* disputes.  The Bankruptcy Code does not define the term "*bona fide* dispute" and so

12    courts have looked to how that term has been interpreted in 11 U.S.C. § 303 when applying

13    section 363(f)(4).  *See* In re Octagon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991).  Under

14    a long line of cases, a *bona fide* dispute exists whenever "there is an objective basis for either a

15    factual or a legal dispute as to the validity of debt."  Id. *quoting* In re Busick, 831 F.2d 745, 750

16    (7th Cir. 1987).  Disputes concerning the priority of interests in a debtor's assets also constitute a

17    *bona fide* dispute for section 363(f)(4) purposes.  Daufuskie Island Props., 431 B.R. at 646.  This

18    approach serves the underlying purpose of Bankruptcy Code section 363(f)(4), which is to allow

19    bankruptcy courts to approve sales "where adjudication of the validity, perfection, amount and

20    priority of a lien will result in a delay detrimental to the best interests of the estate."  In re Farina,

21    9 B.R. 726, 729 (Bankr. D. Me. 1981) *citing* COLLIER ON BANKRUPTCY, 15th Ed., ¶ 363.011.

22      A debtor/trustee must merely provide some factual grounds showing an objective basis

23    for the dispute.  In re Gaylord Grain L.L.C., 306 B.R. 624, 627 (8th Cir. B.A.P. 2004).  "[A]

24    court need not determine the probable outcome of the dispute, but merely whether one exists."

25    Id.  The disputed lien need not be the subject of an immediate or concurrent adversary

26    proceeding. Id. (collecting cases).

27      Here, the Trustee submits that the following constitutes an objective basis to dispute the

28    amount, validity, or priority of the liens on the Debtors' assets:

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

a.   Northern Trust and the Shotgun Entities are in a dispute with the Gonzales Trust currently being litigated before this Court in Adv. Proc. No. 19-01108.  As the Court is aware, in the adversary proceeding, the Gonalzes Trust has objected to the Northern Trust and Shotgun Entities claims,[2] and alleges that it has priority vis-à-vis the defendants in the assets owned by Desert Land LLC and Desert Oasis Apartments LLC.  The Gonzales Trust also alleges two other claims for relief in the adversary proceeding that seek equitable subordination of the Shotgun Entities' claims [Adv. Proc. Doc. No. 1].  Defendants Northern Trust Company and the Shotgun Entities filed a motion to dismiss, or alternatively, for entry of partial summary judgment [Adv. Proc. Doc. No. 9], which the Gonalzes Trust opposed [Adv. Proc. Doc. No. 18].[3]  On April 22, 2020, this Court granted Defendants' motion for partial summary judgment [Adv. Proc. Doc. Nos. 38, 39].  However, the Partial Summary Judgment did not resolve all claims in the adversary proceeding, and the Court declined to certify the ruling under Federal Rule of Civil Procedure 54(b).  Consequently, the Partial Summary Judgment is not a final order, and the Trustee expects that the Gonzales Trust will appeal, and so the claims in the adversary proceeding will not be finally resolved by the time of the auction.  (Counts two and three for equitable subordination against the Shotgun Entities also remain unresolved.)  Accordingly, there is a *bona fide* dispute as to the relative priorities of the Gonalzes Trust, Northern

---

[2]  *See* Complaint for Declaratory Relief, et al filed November 1, 2019 [Adv. Proc. Doc. No. 1, ¶35(c)];  Memorandum Regarding Motion to Dismiss and/or Partial Summary Judgment filed April 22, 2020 ("Partial Summary Judgment") [Adv. Proc. Doc. No. 38, p. 12].

[3]  The Trustee requests that the Court rely on the evidence and pleadings filed in connection with Adversary Proceeding No. 19-01108 in determining whether a *bona fide* dispute exists with respect to the Shotgun Entities and Northern Trust's liens.  *See* In re HE Graf, Inc., 125 BR 604, 606 (Bankr. E.D. Cal. 1991) (bankruptcy court may consider any evidence in the record in the case before it in rendering a decision); *see also* Comite De Jornaleros v. City of Redondo Beach, 475 F.Supp.2d 952, 957 (C.D. Cal. 2006) (court relied on a plaintiff's previously filed declaration to determine that plaintiff had standing); Campbell v. Hewitt, Coleman & Associates, Inc., 21 F.3d 52, 56 (4th Cir. 1994) (despite plaintiff's failure to file interrogatory responses in opposition to motion for summary judgment, the responses were in the court record and the district court erred in not considering that evidence in determining if there was a triable issue of fact).

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

Trust, and the Shotgun Entities in the assets of Desert Land and Desert Oasis Apartments. There is also a *bona fide* dispute concerning whether the Shotgun Entities' claims should be equitably subordinated.

b. The Gonzales Trust obtained its judgment against the Debtors on April 25, 2018.[4] *See* Partial Summary Judgment, p. 11. Gonzales recorded his judgment liens immediately thereafter, and the involuntary petitions commencing these cases were filed on April 30, 2018. *Id.* Hence, the judgment liens against the Debtors' assets were recorded less than 90 days before the involuntary petitions were filed. The Partial Summary Judgment determined that until recordation of the judgment liens, Gonzales only interest was that of a contingent unsecured creditor. *See* Partial Summary Judgment, p. 18. Accordingly, there is a *bona fide* dispute concerning whether the Gonzales Trust's liens are preferential and therefore voidable under 11 U.S.C. § 547(b).[5]

c. David Stoebling is one of the investors in a certain multi-beneficiary real estate-secured loan originally brokered by Aspen Financial Services, LLC ("Aspen") to Desert Land LLA in 2007. The proof of claim filed by Mr. Stoebling bases the perfection of his alleged security interest in Desert Land's assets upon a judgment entered by the District Court of Clark County, Nevada.[6] *See* Proof of Claim No. 3 filed by David Stoebling on July 11, 2018, p. 2 (¶9). Said judgment is attached as Exhibit 3 to the proof of claim. The judgment on its face indicates that it was entered on June 29, 2018 – after the commencement of these cases – and the judgment explicitly excludes Desert Land LLC from its effect. Accordingly, perfection of any

---

[4] *See* Judgment entered in *Tom Gonzales v. Desert Land LLC, et al*, Case No. 2:15-cv-00915-RJC-VPC, a true and correct copy of which is attached hereto as **Exhibit A**.

[5] The Trustee acknowledges that if the auction results in a sale price sufficient to pay all creditors in full, the transfer resulting from recording the judgment liens would not be avoidable under section 547(b) insofar as Gonzales' recovery would not be "more than" what he would have received in a hypothetical Chapter 7 case.

[6] A true and correct copy of Claim No. 3 file by Mr. Stoebling is attached hereto as **Exhibit B**.

lien that may be asserted by David Stoebling is barred by the automatic stay and is therefore void.  40235 Washington Street Corp. v. Lusardi, 329 F.3d 1076, 1080 (9th Cir. 2003) ("Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic 'stay, applicable to all entities, of,' *inter alia*, 'any act to create, perfect, or enforce any lien against property of the estate.' 11 U.S.C. § 362(a). Transfers in violation of the automatic stay are void.").

  d. Juniper Loan Servicing, the Gonzales Trust, the Shotgun Entities' and DLLA/Aspen Creditors are potentially subject to surcharge claims that are being asserted in a separate proceeding.  Accordingly, there is a *bona fide* dispute as to the amount of all of those liens.

  For all of the above reasons, there is a basis for the Court to conclude that the liens are the subject of a *bona fide* disputes.

   3. *The Secured Lenders Can Be Compelled to Accept a Money Satisfaction of Their Respective Interests*

  Bankruptcy Code section 363(f)(5) also authorizes a court to sell property free and clear of an interest where "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  11 U.S.C. § 363(f)(5).  State foreclosure statutes that allow a senior lienholder to sell property, extinguish the junior lien, and remit only net proceeds to the junior after payment of the prior liens in full have been held to constitute "legal or equitable proceedings" for purposes of Bankruptcy Code section 363(f)(5).  In re Jolan, Inc., 403 B.R. 866 (Bankr. W.D. Wash. 2009) (state law receivership action is a legal or equitable proceeding under which lienholder could be compelled to accept a money satisfaction of its lien); In re Boston Generating, LLC, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (state law foreclosure statute constitute "legal or equitable proceedings" for purposes of approving a sale free and clear of an objecting junior lienholder); *See also* Newco Energy v. Energytec, Inc. (In re Energytec, Inc.), 739 F.3d 215, 226 n.5 (5th Cir. 2013) (acknowledging but not deciding that the cramdown provisions of the Bankruptcy Code and state foreclosure statutes could satisfy 11 U.S.C. § 363(f)(5)).

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

Here, under Nevada law, foreclosure of a deed of trust extinguishes interests junior to the foreclosing lender, and the lender is obligated to pay over any net proceeds in excess of sale costs and amounts necessary to satisfy the lien to junior lien holders in their order of priority. NRS 40.462(2).  A foreclosing lender may also seek appointment of a receiver, who is authorized to transfer receivership property upon approval of the court.  NRS 32.260(2); 32.295(2)(c); 32.315.  Moreover, under Nevada law, local entities can force the sale of real property to collect delinquent real property taxes, and similarly, any net proceeds remaining after satisfaction of the property taxes and sale costs is distributed to holders of liens junior to the property tax lien.  NRS 361.595; 361.610(6).  And obviously, the cramdown provisions of section 1129(b) operating in conjunction with section 506(d) are alternative proceedings in which lienholders can be compelled to accept a money satisfaction of their interests.

Since in this case the purported secured creditors are hypothetically subject to cramdown and have positions junior to real property taxes and the relevant state law provides a mechanism through which those liens can be extinguished in exchange for a payment of money, the Court should authorize the sale free and clear of those liens under Bankruptcy Code section 363(f)(5).

4.    *The Court Should Authorize the Trustee to Hold the Proceeds Pending Resolution of the Lien Priority Disputes*

Again, the liens asserted by Northern Trust, the Shotgun Entities and the Gonzalez Trust are the subject of *bona fide* disputes that will be addressed in the pending adversary proceeding. Under the circumstances, it would be inappropriate to require the Trustee to distribute any amount to these entities until the issue of priority and the other claims for relief are resolved.

Moreover, to the extent that the sale results in net proceeds being made available to the secured lenders on account of their lien, the Trustee has rights under Bankruptcy Code section 506(c) to surcharge that lien for expenses incurred by the estate conferring a direct and concrete benefit to them.  11 U.S.C. § 506(c); In re Choo, 273 B.R. 608 (9th Cir. BAP 2002).  Any such right will be established in subsequent proceedings; the Trustee should be authorized to hold the proceeds until that matter can be resolved.

5.    *Northern Trust and the Shotgun Entities Cannot Credit Bid*

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1    Bankruptcy Code section 363(k) provides that only holders of allowed secured claims

2    may credit bid.  11 U.S.C. § 363(k).[7]  Objections to the Northern Trust and Shotgun Entities'

3    claims are now pending in Adversary Proceeding No. 19-01108 [Adv. Proc. Doc. No. 1, ¶35(c)]

4    and have not been resolved by final orders.  As a consequence, the claims of Shotgun and

5    Northern Trust are not deemed allowed under Bankruptcy Code section 502(a).  Accordingly,

6    absent a stipulation with the Trustee or order from the Court temporarily allowing their

7    respective claims, neither is entitled to credit bid.  In re RML Dev., Inc., 528 B.R. 150, 154

8    (Bankr. W.D. Tenn. 2014).

9                    6.    *The Court Should Waive the FRBP 6004(h) and 6006(d) Stays*

10    Bankruptcy Rules 6004(h) and 6006(d) impose a 14-day stay on the effectiveness of an

11    order approving a sale of estate assets or assignment of a contract/ease "unless the court orders

12    otherwise."  Fed. Rule Bankr. Proc. 6004(h); Fed. Rule Bankr. Proc. 6006(d).   These rules are

13    intended to protect the rights of an objecting party, and so the court should eliminate the 14–day

14    stay period as a matter or course and allow the sale or other transaction to close immediately

15    where there has been no objection to the procedure.  In re Borders Group, Inc., 453 B.R. 477,

16    486 (Bankr. S.D.N.Y. 2011).

17    If an objection has been filed and is overruled, the court should eliminate or reduce the

18    14–day stay period "upon a showing that there is a sufficient business need to close the

19    transaction within the 14–day period and the interests of the objecting party, taking into account

20    the likelihood of success on appeal, are sufficiently protected." Id. If the objecting party informs

21    the court that it intends to appeal and seek a stay, the 14–day stay period "should not be reduced

22    to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the

23    court determines that the need to proceed sooner outweighs the objecting party's interests." Id.

24

25

26

---

27    [7]    The statute provides in pertinent part:

28         "At a sale under subsection (b) of this section of property that is subject to a lien that that
          secures an allowed claim, unless the court for cause orders otherwise the holder of such
          claim may bid at the sale . . ." 11 U.S.C. § 363(k).

1   In this case, the Trustee submits that waiver of the stay will be appropriate in any

2   instance where a successful bidder requires closing to occur prior to expiration of the stay,

3   regardless of whether an objection has been made.

4   **III.    CONCLUSION**

5   Wherefore, the Trustee prays for an Order:

6   i.      determining that The Northern Trust Company and the Shotgun Entities

7   are not holders of allowed claims, and therefore, not entitled to credit bid under 11 U.S.C.

8   § 363(k);

9   ii.     approving the sale of the Debtors' assets pursuant to the terms of the

10  Auction and Sale Procedures Order free and clear of all liens pursuant to Bankruptcy

11  Code Section 363;

12  iii.    finding the Assets subject to any sale are property of the debtors' estates

13  and the Trustee is authorized and directed to consummate the proposed transactions and

14  to comply in all respects with the terms of thereof;

15  iv.     finding the purchase price as approved constitutes a fair value for the

16  subject assets;

17  v.      finding there is a sound business purpose for the sales;

18  vi.     finding notice of the Auction and Sale Hearing was good and sufficient

19  and was provided timely to all creditors and parties-in-interest, including, without

20  limitation, any and all creditors, if any, holding liens on the assets;

21  vii.     finding the proposed transactions were negotiated at arms' length, that the

22  Qualified Bidders acted in good faith in all respects, and that the winning bidder is a

23  buyer in good faith pursuant to the provisions of Bankruptcy Code Section 363(m);

24  viii.    waiving the stays imposed by Bankruptcy Rules 6004(h) and 6006(d); and

25  //

26

27  ix.     For such other further relief that is just and proper.

28  DATED: April 23, 2020                      NUTI HART LLP

NUTI HART LLP
411 30TH STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NUTI HART LLP
411 30ᵀᴴ STREET, SUITE 408
OAKLAND, CA 94609-3311
TELEPHONE: 510-506-7152

By:   */s/ Kevin W. Coleman*
      Kevin W. Coleman
      Attorneys for Kavita Gupta,
      Chapter 11 Trustee