FENNEMORE CRAIG, P.C.
Cathy L. Reece *(AZ Bar No. 005932)*
Anthony W. Austin (NV Bar No. 010850)
2394 E. Camelback Rd., Ste. 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5343
Facsimile: (602) 916-5543
Email: creece@fclaw.com
       aaustin@fclaw.com

*Attorneys for The Northern Trust Company*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DESERT LAND, LLC,<br><br>          Debtor. | Chapter 11<br><br>Case No.: BK-S-18-12454-GS<br><br>(Jointly Administered with<br>BK-S-18-12456-GS and BK-S-18-12457-GS)<br><br>**OPPOSITION TO CHAPTER 11 TRUSTEE KAVITA GUPTA'S MOTION TO APPROVE SALE OF DEBTORS' ASSETS FREE AND CLEAR AND GRANT RELATED RELIEF**<br><br>Hearing Date: May 19, 2020<br>Hearing Time: 9:30 a.m. |
| In re<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>          Debtor. | |
| In re<br><br>DESERT OASIS INVESTMENTS, LLC,<br><br>          Debtor. | |

The Northern Trust Company ("Northern Trust"), a secured lender of Desert Oasis Apartments LLC, hereby files its Opposition to the *Chapter 11 Trustee Kavita Gupta's Motion to Approve Sale of Debtors' Assets Free and Clear of Liens and Grant Related*

*Relief* [Dkt. 1079] (the "Sale Motion").[1] While Northern Trust does not object to the general concept of the sale of the property of the estate, the Trustee improperly seeks to preclude Northern Trust from exercising its credit bid rights and requests that this Court order the funds that are rightfully the property of Northern Trust be escrowed for an indeterminate amount of time. For the reasons set forth herein, any order approving the Sale Motion cannot include provisions limiting Northern Trust's credit bid and cannot order the sale proceeds escrowed.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Sale Motion notably ignores that much of the Trustee's requested relief is barred by the cash collateral stipulation, first agreed to by the Debtors, but accepted by the Trustee. *See* Dkt. 78, ECF 99 in Case No. 18-12456-LEB (the "Cash Collateral Stipulation"). The Trustee is bound by the admission that Northern Trust's claims "constitute legal, valid, and binding obligations of Debtor, enforceable in accordance with the terms…" and that the "Liens of the Lender on the Property secure the Prepetition Obligations and constitute valid, enforceable, and perfected first-priority and second-priority liens, are Cross Collateralized and are not subject to avoidance or subordination…." *Id*.

Additionally, the Trustee is bound by the Cash Collateral Stipulation's waiver of any surcharge against Northern Trust. The Cash Collateral Stipulation states:

> Debtor, for itself and its successors and assigns, agrees that it will not (i) surcharge the Collateral of the Lender for any expenses incurred in this Case or any superseding case under § 506(c) of the Bankruptcy Code or otherwise and expressly waives the right to surcharge the Collateral of the Lender, and (ii) assert any "equities of the case" claims under Section 552(b) of the Bankruptcy Code against the Lender.

Accordingly because the Trustee is bound by these admissions its requests to (i) escrow the sale proceeds for an indeterminate period of time because of some alleged dispute over Northern Trust's claims and (ii) prevent a credit bid must fail.

---

[1] The Trustee has filed a motion to assume and assign the contract and leases related to the apartment complex. [Dkt 1078]. If the Sale Motion is approved we have no objection to the assignment as requested provided that the cure amounts set forth in the assumption motion are accurate.

FENNEMORE CRAIG

- 2 -

15763040.4

### I. The Court has resolved any dispute as to Northern Trust's claim.

Putting aside the Trustee's admissions, the Court has held that there is no legally cognizable basis to subordinate Northern Trust's liens and right to payment to the claims of the Gonzales Trust. On November 1, 2019, the Gonzales Trust instituted an adversary against Northern Trust to assert its priority right to payment (the "Adversary"). The Gonzales Trust asserted a single cause of action against Northern Trust that sought a declaration from this Court that he held a priority right to payment based upon the Parcel A Transfer Fee. No other basis was alleged by the Gonzales Trust as to why it held any interest prior to Northern Trust's recorded deeds of trust. Additionally, the Gonzales Trust sought a determination that Northern Trust's Proof of Claim #1-1 in case no. 18-12456 was not an allowed claim.

Notably, the Trustee is not a party to the Adversary and has not objected to Northern Trust's claim. In fact, the Trustee, in connection with the Cash Collateral Stipulations has waived any objection to Northern Trust's claims and acknowledged they are valid first position liens. *See* Dkt. 78, ECF 99 in Case No. 18-12456-LEB.

Northern Trust moved to dismiss and in the alternative for summary judgment in the Adversary. After two rounds of briefing and multiple hearings, the Court entered its Memorandum Regarding Motion to Dismiss and/or Motion for Partial Summary Judgment [Adv DE 38] granting summary judgment in Northern Trust's favor and against the Gonzales Trust. The Court held

> "Because [the Gonzales Trust] has failed to come forward with any legally cognizable basis to establish that the Plan and Settlement Agreement provided him with a claim entitled to priority over previously recorded deeds of trust, as subsequently discussed, summary judgment is appropriate on Count One."

[Adv Dkt. 38 pg 18:20 to 19:1].

Accordingly, there are no pending claims or objections to Northern Trust's claims or liens.

### II. There is no basis to deny Northern Trust its credit bid right

Relying solely on the concluded Adversary, the Trustee attempts to strip Northern Trust of its right to credit bid. The Trustee does not, and indeed cannot, assert any objection to Northern Trust's claim as it has admitted to the legitimacy and priority of the claims. Rather, the sole basis to prevent Northern Trust from credit bidding is the fact that the Court did not enter Rule 54(b) language with respect to its Memorandum Decision. Such an argument however, stretches the Memorandum Decision in illogical ways.

#### A. No appeal has been taken by the Gonzales Trust.

The Trustee assumes that an appeal will be taken of the Memorandum Decision by the Gonzales Trust. However, such an appeal is not a certainty and may never occur. Reliance on a "what if" to prevent a credit bid is improper and not supported by the case law.

#### B. The Adversary is not cause to preclude Northern Trust's right to credit bid.

The Court's Memorandum Decision is sufficient to restore, to the extent it was ever eliminated, Northern Trust's right to credit bid. The Supreme Court has ruled that debtors may not sell their property free of liens without allowing a lienholder to credit bid. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065, 2067, 182 L. Ed. 2d 967 (2012) (affirming the denial of a Chapter 11 plan because "the debtors' proposed auction procedures do not permit the bank to credit-bid").

Northern Trust concedes the right to a Section 363(k) credit bid is not an absolute right. While "[i]t is beyond peradventure that a secured creditor is entitled to credit bid its allowed claim ... [t]he law is equally clear, as § 363(k) provides, that the Court may 'for cause order otherwise.'" *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 60–61 (Bankr. D.Del. 2014); *see also In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 315–316 (3d Cir. 2010). However, "[t]he bankruptcy court [] should only modify or deny a § 363(k) credit bid when equitable concerns give it cause"; indeed, "modification or denial of credit bid rights should be the ***extraordinary exception and not the norm***." *In re RML Dev.,*

*Inc.*, 528 B.R. 150, 155–56 (Bankr. W.D. Tenn. 2014) (emphasis added).  The Sale Motion is devoid of cause.

The Trustee's only asserted "cause" to deny Northern Trust its right to credit bid is the lack of a final judgment.  The Trustee does not allege any misconduct by Northern Trust or how the limitation of Northern Trust's $5 million right to credit bid will somehow improve the auction results.  Simply asserting a dispute, to which the Trustee is not a party and cannot raise herself, has not been fully appealed is not a basis to limit the right to a Section 363(k) credit bid.  The Trustee provides no case law, and Northern Trust has found none, supporting this position.

To the contrary there are numerous examples of courts allowing credit bids in the absence of Rule 54(b) language. *See, e.g.*, *Equity Income Partners LP v. Chicago Title Ins. Co.*, CV-11-1614-PHX-SMM, 2014 WL 12745025, at *2 (D. Ariz. Jan. 29, 2014) (allowing a full-credit bid prior to issuing a 54(b) ruling); *In re Skuna River Lumber, LLC*, 564 F.3d 353, 355 (5th Cir. 2009) (same). Moreover, "resolving issues related to managing a credit bid is merely one procedural step in the complex, multi-step process in achieving a final disposition of these cases." *In re Empire Generating Co, LLC*, 19-CV-5721 (CS), 2020 WL 1330285, at *6 (S.D.N.Y. Mar. 23, 2020) (quotations omitted) [includes a strong systematic analysis rejecting a requested limitation on credit bid right].

The Trustee's position is incongruent with the law. None of the expressed policy rationales or specific factual circumstances where a limitation on or loss of credit bid rights is appropriate apply here. And no general rule exists stating that the lack of a final judgment prevents credit bids.

Additionally, to the extent the Trustee asserts there is some pending claim objection that argument elevates form over function.  Section 502(b) states that if a claim objection is made then after notice and a hearing the Court shall determine the amount of the creditor's claim.  Here, if Count One in the Adversary is deemed a claim objection to Northern Trust's claims then the Court has given notice and held multiple hearings on the amount and priority of Northern Trust's claims as reflected in the Memorandum Decision.

Accordingly, any claim objection has been resolved and Northern Trust holds an allowed secured claim.

### C. The Trustee is bound by its admissions in the Cash Collateral Stipulation.

Finally, the Trustee should be estopped from arguing that Northern Trust's claim is secured by anything but "valid, enforceable, and perfected first-priority and second-priority liens" as set forth in the Cash Collateral Stipulations. The Trustee's use of the Adversary and the Gonzales Trust's failed attempt to challenge the priority of Northern Trust's claims is inappropriate and should not be condoned by the Court. Put simply, the Trustee has no basis to assert Northern Trust has anything less than its full rights as a secured lender.

### D. Northern Trust's claims should be deemed allowed for purposes of the sale and any auction.

To the extent the Court entertains the baseless attempt to revoke Northern Trust's credit bid, Northern Trust should be authorized to credit bid at the auction. Section 502(c)(1) authorizes this Court to allow Northern Trust's claim to encourage the administration of the bankruptcy. As noted above, the sole basis for preventing Northern Trust from credit bidding is a technicality of whether a judgment is "final." Further, the Trustee has no basis to object to Northern Trust's claims because she has waived any such claims and is bound by the admission that Northern Trust's claims are "valid, enforceable, and perfected first-priority and second-priority liens…." Allowance of Northern Trust's right to credit bid for purposes of the sale will facilitate the process and protect Northern Trust's rights without additional procedures or delay. Given the lack of any asserted prejudice to the estate, the Trustee has no legitimate basis to oppose such a request.

**III.   Trustee has no basis to escrow the sale proceeds for an indefinite period.**

The Trustee seeks authorization to indefinitely hold the sale proceeds for an indeterminate amount of time to which Northern Trust is entitled for two reasons neither of which are persuasive.

**A.   No bona fide dispute exists as to Northern Trust's claims.**

The Trustee seeks to hold the funds indefinitely because she alleges there is still a bona fide dispute over Northern Trust's claims and she presumes an appeal will be taken. Again, the Trustee seeks to interject herself into the Adversary where she has no claim and must acknowledge that Northern Trust's claims prevail over the Gonzales Trust. Nevertheless, there is no bona fide dispute over Northern Trust's claims which have been approved by an order of this Court that is not subject to any stay. *See In re Marciano*, 459 B.R. 27, 53 (B.A.P. 9th Cir. 2011), *aff'd,* 708 F.3d 1123 (9th Cir. 2013)(unstayed judgments or orders are not subject to a bona fide dispute). Aside from this, the Trustee has not articulated an objective basis for finding that a bona fide dispute exists as to Northern Trust's claims. *Id*. at 272-73. At best she rehashes the Gonzales Trust's arguments which were summarily rejected by the Court. As stated in the Memorandum Decision:

> "Because [the Gonzales Trust] has failed to come forward with any legally cognizable basis to establish that the Plan and Settlement Agreement provided him with a claim entitled to priority over previously recorded deeds of trust, as subsequently discussed, summary judgment is appropriate on Count One."

[Adv Dkt. 38 pg 18:20 to 19:1]. The Trustee fails to provide an objective basis for this Court to determine that Northern Trust's liens are not first/second position liens. Simply citing to the record of the Adversary cannot demonstrate an objective basis for a bona fide dispute especially in light of the unequivocal ruling of the Memorandum Decision.

By holding the sale proceeds indefinitely, the Trustee is, essentially, requesting a stay pending appeal for an adversary proceeding to which the Trustee is not a party. There

FENNEMORE CRAIG

- 7 -

15763040.4

are two fatal problems with this position: (1) the Gonzalez Trust has sought no such stay/appeal here, which renders the Trustee's request unripe; and (2) in the event that the Gonzalez Trust requests a stay, then the Gonzalez Trust, not Northern Trust, would be obligated to furnish a supersedeas bond or other approved security to maintain the status quo. Fed. R. Bankr. P. 8007(a)(1)(B).

The Trustee's request to hold the funds indefinitely leads to a variety of harmful results for Northern Trust. First, its interest, which was paid through the Cash Collateral Order using the rents from the Apartments, will cease to be paid and begin accruing again increasing Northern Trust's claims against the estate. The principal payments and attorneys' fees will also cease to be paid from the rents through the Cash Collateral Order.

Second, the Trustee ignores that Northern Trust will suffer harsh regulatory accounting treatment due to the lack of recurring and regular cash flow to service interest and principal, even though the proceeds are escrowed. If the loan is not repaid at the closing, Northern Trust will suffer harm caused by the Trustee's refusal to turnover sale proceeds and request to indefinitely hold the funds. *In re Matter of Theatre Holding Corp.*, 22 B.R. 884, 886 (Bankr. S.D.N.Y. 1982). These losses must be bonded for by the Trustee if she intends to indefinitely hold the funds. *See In re Motors Liquidation Company*, 539 B.R. 676, 686-87 (Bankr. S.D.N.Y. 2015)(holding that opportunity costs are properly compensable in setting a bond requirement). The purpose of a bond is not to protect the Trustee's claims but to protect Northern Trust from "diminution in the value of property pending appeal" and to "secure the prevailing party against any loss that might be sustained." *In re Adelphia Communications Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007)(internal citations omitted).

If the Trustee wants to hold the funds until the Adversary is resolved the process to set a supersedeas bond must be followed and set to compensate Northern Trust for its harms.

### B. Northern Trust cannot be the subject of a surcharge claim.

The Trustee's only other basis to impound the sale proceeds is improper because the Trustee is not entitled to surcharge Northern Trust.[2] The Trustee is expressly precluded from seeking a surcharge under 11 U.S.C. § 506(c). The Cash Collateral Stipulation expressly waives any claim the Debtors or the Trustee has to surcharge Northern Trust's property. Paragraph 8 of the Cash Collateral stipulation states:

> Debtor, for itself and its successors and assigns, agrees that it will not (i) surcharge the Collateral of the Lender for any expenses incurred in this Case or any superseding case under § 506(c) of the Bankruptcy Code or otherwise and expressly waives the right to surcharge the Collateral of the Lender, and (ii) assert any "equities of the case" claims under Section 552(b) of the Bankruptcy Code against the Lender.

Dkt 78. The Trustee has since agreed to, and extended, the Cash Collateral Stipulation multiple times without revision to Paragraph 8. *See* Dkt. 1083.

Accordingly, every basis for the Trustee to indefinitely hold the funds to which Northern Trust is entitled fails. Requiring Northern Trust to wait for its sale proceeds would subject it to continued harm as interest, attorneys' fees, and regulatory expenses all continue to grow. On this record, the Trustee fails to establish why Northern Trust should not be paid at the closing of the sale.

Northern Trust is entitled to be immediately paid the portion of the sale proceeds in satisfaction of its secured interest at the closing of any sale and should not be forced to wait for that satisfaction, incurring additional expenses and losses, while the rest of the parties and the Trustee resolve the outstanding issues. And under no circumstances is it proper to require Northern Trust to furnish the security for any forthcoming stay requested by Gonzalez.

### C. Waiver of Rule 6004(h) and 6006(d)

---

[2] Northern Trust acknowledges that the Trustee has filed a motion seeking to surcharge other secured creditors in this case but did not request such a surcharge against Northern Trust. Because the Trustee argues in the Sale Motion that the funds should be escrowed because of the Trustee's right to surcharge the funds, Northern Trust must respond as if the Trustee is seeking a surcharge against its collateral.

FENNEMORE CRAIG

- 9 -

15763040.4

To the extent the Court intends to allow the Trustee to impose the indefinite escrow on Northern Trust, waiver of Rule 6004(h) and 6006(d) is improper.  Parties are entitled to time to appeal any order requiring such an escrow of funds and therefore waiver of Rule 6004(h) and 6006(d) is not appropriate.  The Trustee has not established that the small delay from these two rules will somehow prejudice the sale process or prevent the closing of any sale.

### IV.    Conclusion

For the reasons set forth herein, the Trustee's request to limit Northern Trust's credit bid and escrow the sale proceeds indefinitely is unfounded.  The Trustee has no basis to challenge Northern Trust's claims and this Court has ruled that the Gonzales Trust does not have priority over Northern Trust.  Accordingly, Northern Trust should be entitled to credit bid and paid immediately from the sale proceeds upon the closing of the sale.

Dated:   May 7, 2020

**FENNEMORE CRAIG, P.C.**

By: */s/ Anthony W Austin*
    Cathy L. Reece (AZ Bar No. 005932)
    Anthony W. Austin  (010850)
    *Counsel for The Northern Trust Company*

COPY of the foregoing served by E-mail/ECF Notice this 7th day of May, 2020 upon:

Candace Carlyon
Dawn Cica
Tracy M. O'Steen
Carylon Cica CHTD
ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tosteen@carlyoncica.com
*Attorneys for Cristi Bulloch as Trustee of the Christi Bulloch Separate Property Trust dated 3/28/2003, Desert Land Acquisition, LLC The Bulloch Heritage Trust, The Gulf Stream Irrevocable Trust dated 6/20/2000,*

FENNEMORE CRAIG

- 10 -

15763040.4

*The Howard and Christi Bulloch Family*
*Trusted dated 9/14/1995, The Howard*
*Bulloch Separate Property Trust dated 3/28/2003,*
*David Gaffin, and Howard Bulloch*

David M. Crosby
Troy S. Fox
Crosby & Fox, LLC
info@crosby.lvcoxmail.com,
r48506@notify.bestcase.com
*Attorneys for Canam Productions, Inc.*

Lenard E. Schwartzer
Schwartzer & McPherson Law Firm
bkfilings@s-mlaw.com
*Attorneys for Debtors*

Brian D. Shapiro
Law Office of Brian D. Shapiro
Brian@brianshapirolaw.com
*Trustee Brian Shapiro*

Edmund M. McDonald
Edmund Gee
U.S Trustee's Office-LV-11,11
Edward.m.mcdonald@usjod.gov
Edmund.gee@usdoj.gov

Jamie P. Dreher
Downey Brand LLP
jdreher@downeybrand.com
reno@downeybrand.com
*Attorneys for the Gonzales Trust*

Mark Wray
Law Office of Mark Wray
mwray@markwraylaw.com
tmoore@markwraylaw.com
*Attorneys for the Gonzales Trust*

Kevin W. Coleman
Kimberly S. Fineman
Christopher Hart
Nuti Hart, LLP

FENNEMORE CRAIG

- 11 -

15763040.4

kcoleman@nutihart.com
kfineman@nutihart.com
chart@nutihart.com
*Attorneys for Kavita Gupta*

Talitha B. Gray Kozlowski
GTG, LLP
tgray@gtg.legal
*Attorneys for Kavita Gupta*

Justin Henderson
Lewis Roca Rothgerber Christie
Jhenderson@lrrc.com
*Attorneys for Juniper Loan Servicing Corp.*

Dillon E. Jackson
Foster Pepper PLLC
Dillon.jackson@foster.com
*Attorneys for Juniper Loan Servicing Corp.*

Michael N. Feder
Dickinson Wright
mfeder@dickinson-wright.com
*Attorneys for Dondero Survivors Trust*

Brigid Higgins
Black & LoBello
bhiggins@blacklobellowlaw.com
*Attorneys for Shotgun Creek Entities*

Richard F. Holley
Holley Driggs Walch Fine Wray Puzey Thompson
rholley@nevadafirm.com
*Attorneys for Arthur J. And Margaret L Gilbert Family Trust*

Bart K. Larsen
James P. Shea
Shea Larsen PC
blarsen@shea.law
jshea@shea.law
*Attorneys for Citation Financial, LLC and Compass Investment, LLC*

1 | Eric R. Olsen
2 | Mark M. Weisenmiller
  | GTG, LLP
3 | eolsen@gtg.legal
  | mweisenmiller@gtg.legal
4 | *Attorneys for Wash Multifamily Laundry Systems, LLC*
5 |
6 | */s/ Gidget Kelsey*