STEVEN T. GUBNER – Nevada Bar No. 4624
JERROLD L. BREGMAN – *Pro Hac Vice* granted
SUSAN K. SEFLIN – *Pro Hac Vice* granted
BRUTZKUS GUBNER
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile:   (866) 995-0215
Email:   sgubner@bg.law
          jbregman@bg.law
          sseflin@bg.law

Attorneys for Jeffrey I. Golden,
Chapter 7 Trustee for Desert Land, LLC

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.  18-12454-gs<br>Chapter 7 |
| Desert Land, LLC, | |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>[*Declaration of Jeffrey I. Golden filed concurrently herewith*]<br><br>Hearing Date:  November 18, 2021<br>Hearing Time:  1:30 p.m. |

**TO THE HONORABLE GARY SPRAKER, UNITED STATES BANKRUPTCY JUDGE, THE**

**OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

Jeffrey I. Golden, in his capacity as the duly appointed and serving chapter 7 trustee (the

"Trustee") for the bankruptcy estate of Desert Land, LLC (the "Debtor" or "Desert Land"), hereby

submits his motion (the "Motion") for entry of an order approving that certain Settlement Agreement and

Mutual Release ("Settlement Agreement"), substantially in the form attached hereto as **Exhibit 1**, entered

into by and among the Trustee, on the one hand, and on the other hand, (i) Desert Oasis Apartments, LLC

("DOA") by Kavita Gupta, solely in her capacity as the disbursing agent ("Disbursing Agent") under

DOA's confirmed chapter 11 plan and not individually or as an administrative creditor of Desert Land, (ii)

Bradley Busbin, as Trustee ("Busbin Trustee") of the Gonzales Charitable Remainder Unitrust One

("Busbin Trust"), and (iii) Nuti Hart LLP ("Nuti Hart"), solely in its capacity as an administrative creditor

of DOA and Desert Land.  The Trustee, the Disbursing Agent, the Busbin Trustee and Nuti Hart are hereafter collectively referred to as the "Parties."

This Motion is made and based upon Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following memorandum of Points and Authorities below, Exhibit 1 attached hereto, the Declaration of Jeffrey I. Golden filed contemporaneously herewith, the papers and pleadings on file in Desert Land's bankruptcy case and in DOA's bankruptcy case, Bankr. Case No. 18-12456; and any oral argument which the Court may entertain at the hearing of the Motion.  The proposed order on the Motion is attached as **Exhibit 2** hereto.

Dated: October 18, 2021                         BRUTZKUS GUBNER


                                                By:  _/s/ Susan K. Seflin_____
                                                     Jerrold L. Bregman
                                                     Susan K. Seflin
                                                     Attorneys for Jeffrey I. Golden, Chapter 7
                                                     Trustee for Desert Land, LLC

2710961

**POINTS AND AUTHORITIES**

## I.    JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to LR 9014.2, the Trustee, the Disbursing Agent, the Busbin Trustee and Nuti Hart consent to the entry of a final order by this Court on this Motion.

## II.    RELEVANT FACTS

1.    On April 30, 2018 (the "Petition Date"), Bradley J. Busbin, as Trustee of the Gonzales Charitable Reminder Unitrust One, filed involuntarily petitions for relief under chapter 7 of the Bankruptcy Code against Desert Land, DOA and Desert Oasis Investments, LLC ("DOI" and collectively, with Desert Land and DOA, the "Desert Entities") in the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court"), Case Nos. 18-12454, 18-12456, and 18-12457.

2.    On June 28, 2018, the Court granted the respective motions for conversion of Desert Land's and its affiliates' cases to chapter 11, inclusive of Desert Land's affiliates DOA, DOI and SkyVue Las Vegas, LLC [ECF No. 79].

3.    As of the Petition Date, the Desert Entities collectively owned 39.475 acres of partially developed land in Las Vegas, on Las Vegas Boulevard across from the Mandalay Bay hotel, upon which a 128-unit apartment complex and a motel operated.

4.    On April 2, 2019, the Court entered an order [ECF No. 528] granting the application by the United States Trustee to appoint Kavita Gupta as the chapter 11 trustee of the Desert Entities' cases.

5.    On June 12, 2020, Kavita Gupta resigned as the chapter 11 trustee for the Desert Land case but remained as the chapter 11 trustee for the DOA and DOI bankruptcy cases.

6.    On June 15, 2020, the United States Trustee selected and appointed Jeffrey I. Golden as chapter 11 trustee for Desert Land [ECF No. 1265] and filed its application seeking Court approval thereof [ECF No. 1266].  On June 18, 2020, the Court entered its order granting the application to approve the appointment of Jeffrey I. Golden as Desert Land's chapter 11 trustee.

7.    The Trustee filed a Proof of Claim in the bankruptcy case of DOA on September 23, 2020,

2710961

designated in that case as Claim Number 3.1, in the amount of $78 million. The proof of claim was

subsequently amended on December 15, 2020 and designated as claim number 3.2, in the amount of $4.5

million (the "Desert Land DOA Claim").

8.    The Trustee asserts that the Desert Land DOA Claim is a valid claim. The Disbursing

Agent and the Busbin Trustee dispute the validity of the Desert Land DOA Claim.

9.    On January 8, 2021, Nuti Hart LLP ("Nuti Hart") filed its *Renewed Final Application for Compensation and Expense Reimbursement, as Amended* [ECF No. 1584] (the "Nuti Hart Final Fee App")

pursuant to which it sought final approval of its fees and expenses incurred while it was bankruptcy

counsel to Kavita Gupta, the original chapter 11 trustee appointed in this case.  The Trustee filed an

objection to the Nuti Hart Final Fee App [ECF No. 1620]; Nuti Hart filed a reply to the Trustee's

objection [ECF No. 1625].

10.   On or about March 18, 2021, the Bankruptcy Court entered orders approving the final fee

applications of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and Aviva Gordon in

the Desert Land case, which orders are final and non-appealable.

11.   On April 9, 2021, the *Order Converting Chapter 11 Case to Chapter 7* [ECF No. 1675]

was entered and the Desert Land bankruptcy case was converted to chapter 7.

12.   On April 12, 2021, the Trustee was appointed as the chapter 7 trustee of the Desert Land

estate [ECF No. 1678].

13.   A chapter 11 plan in the DOA bankruptcy case [DOA ECF No. 239] (the "DOA Chapter

11 Plan") was confirmed pursuant to Bankruptcy Court order entered on June 15, 2021 [DOA ECF No.

338] (the "DOA Confirmation Order") and became effective as of July 1, 2021.  The Busbin Trustee has

an allowed claim in the DOA bankruptcy case, which claim is subject to modification by, and the rights of

the Busbin Trustee may become modified by, the occurrence of a "Reversal Event" as defined in and as

provided for in the DOA Chapter 11 Plan.

14.   The Desert Land DOA Claim and Nuti Hart's administrative fee claims in the DOA

and Desert Land cases are the sole subject of the Settlement Agreement.  For the avoidance of any

doubt: (1) the Settlement Agreement has no impact or effect on the final orders approving the

administrative claims of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and

4

2710961

Aviva Gordon in the Desert Land case and/or the standing, rights, claims and defenses of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and Aviva Gordon in their capacity as administrative creditors in the Desert Land case; and (2) no provision of the Settlement Agreement shall apply to Ms. Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP or Aviva Gordon individually and/or in their capacity as administrative creditors of Desert Land.

15.    The Parties have met and conferred by way of a mediation conference held on July 21, 2021, with the Hon. Judge Paul Sala, and in order to avoid the uncertainties and costs of litigation concerning the Desert Land DOA Claim and Nuti Hart's administrative fee claims in the DOA and Desert Land cases, the Parties agreed to settle and resolve their differences and disputes as set forth below and in the Settlement Agreement. *See* **Exhibit 1.**

## III.    SALIENT TERMS OF THE SETTLEMENT AGREEMENT

The salient terms of the Settlement Agreement are set forth below.  To the extent this description conflicts with the Settlement Agreement, the terms of the Settlement Agreement, **Exhibit 1**, shall control.

1.    **Effective Date.**  Subject to paragraphs 2.d and 3.c of the Settlement Agreement, the Settlement Agreement shall become effective (the "Effective Date") on the date that the Bankruptcy Court order granting this Motion and approving the Settlement Agreement in its entirety becomes final and non-appealable ("Final Order").

2.    **Payment to Desert Land Estate & Consent of Busbin Trustee.**  The Disbursing Agent will pay the Trustee the sum of $425,000 from the funds held by the DOA estate which are attributable to and deducted from the distribution to the Busbin Trust under the DOA Chapter 11 Plan.  By the Settlement Agreement, the Busbin Trustee consents to and directs the foregoing distribution to the Trustee.  The Disbursing Agent shall make the payment to the Trustee on or within five (5) business days after the order approving the Settlement Agreement and granting this Motion becomes a Final Order.

3.    **Withdrawal of Desert Land DOA Claim.**  The Trustee agrees to accept the payment of $425,000 set forth in paragraph 2 above in full and final satisfaction of the Desert Land DOA Claim. Upon payment of the $425,000 to the Trustee, the Desert Land DOA Claim shall be deemed withdrawn with prejudice without any further action required and the Disbursing Agent is authorized, but not

2710961

required, to file a withdrawal of the Desert Land DOA Claim.  Upon payment of the $425,000 to the

Trustee, said funds shall become as asset of the Desert Land estate.

4.     **Nuti Hart Administrative Claim in DOA Estate.**  As set forth in Section 3.c of the

Settlement Agreement, in its First Interim Application for Compensation and Expense Reimbursement

[DOA ECF No. 146] filed in the DOA bankruptcy case, Nuti Hart sought approval of payment by the

DOA estate of approximately 80% of the fees, costs and expenses incurred by the three bankruptcy estates

in relation to the auction of the estates' real properties (collectively the "Auction Fees"), asserting a

disproportionate benefit of the auctions to the DOA estate. The Bankruptcy Court's order approving Nuti

Hart's First Interim Fee Application [DOA ECF No. 184] allowed 33% of Auction Fees to be paid from

the DOA estate, but left open the issue of a possible increase in the percentage of the Auction Fees be paid

by the DOA estate.   Pursuant to the Settlement Agreement, the Busbin Trustee and Nuti Hart stipulate

and agree that no more than an additional $105,000 (in addition to the 33% of the Auction Fees previously

approved) shall be sought from the DOA bankruptcy estate on account of the Auction Fees, and the

Busbin Trustee will not object to and will approve payment of up to the additional sum of $105,000 for

payment of Auction Fees to Nuti Hart from the DOA estate.   Section 3.c of the Settlement Agreement is

not applicable to the Desert Land estate and does not involve the Desert Land estate.  However, it is a

salient term of the Settlement Agreement and is therefore being disclosed as such.  The legal analysis set

forth below does not address Section 3.c of the Settlement Agreement.

5.     **Nuti Hart Chapter 11 Administrative Claim in Desert Land Estate.**  The Nuti Hart

Final Fee App will be allowed in full (subject to any agreed upon reductions with the United States

Trustee or any other party), provided that Nuti Hart shall not receive more than $50,000 (which amount is

in addition to the $85,000 Nuti Hart has already received in the Desert Land bankruptcy case) from the

Desert Land estate in full satisfaction of its allowed chapter 11 administrative claim in the Desert Land

bankruptcy case.

6.     **Successors and Assigns.**  The Settlement Agreement is binding upon and shall inure to the

benefit of the Parties and their respective agents, employees, representatives, officers, divisions, directors,

subsidiaries, affiliates, assigns, heirs and successors, including any successor trustee in the DOA or Desert

Land bankruptcy cases.

2710961

7.    **No Admission.**  The Settlement Agreement is not intended to conclusively establish the truth of any matter, and each Party to the Settlement Agreement expressly denies any liability to the other Parties and to third parties.

8.    **Mutual General Releases.**  Paragraph 5 of the Settlement Agreement contains extensive mutual releases between the Parties.

For the reasons set forth herein, the Trustee respectfully requests that the Court grant this Motion and approve the Settlement Agreement as in the best interests of this estate.

## IV.    LEGAL AUTHORITY AND ARGUMENT

For the reasons discussed herein, the Trustee respectfully submits that the Settlement Agreement should be approved as in the best interests of the Estate and its creditors.

### A.    Legal Standard for Approval

Federal Rule of Bankruptcy Procedure 9019 provides that on motion by a trustee, the Court may approve a compromise or settlement.  Fed. R. Bankr. P. 9019(a).  The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case.  *In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988); *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

#### 1.    The Settlement Agreement Meets the Criteria for Approval.

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement: (a) The probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.  *Woodson, supra*, 839 F.2d at 620 (quoting *A&C Properties, supra*, 784 F.2d at 1381).  A settlement negotiated by a trustee, as a representative of the estate, is entitled to deference.  *In re Morrison*, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised.  *In re Walsh Construction, Inc., supra*, 669 F.2d at 1328. In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be

2710961

settled and need not determine whether the settlement presented is the best one that could possibly have been achieved.  Instead, the Court's responsibility is only to "canvass the issues to see 'whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).

The Trustee has the right to exercise reasonable business judgment in an effort to maximize the value of the assets of the estate.  So long as a proposed compromise results in a recovery above the lowest point in the range of reasonable compromises, the Trustee should be authorized to proceed with such compromise.  In light of the facts and circumstances in this case, the application of the *A&C Properties* factors shows that the compromise set forth in the Settlement Agreement is fair and equitable, is in the best interests of the estate, and is well above the lowest point in the range of reasonableness.

        2.      <u>The Settlement Agreement is consistent with, complies with, and does not impair any of the terms of the DOA Chapter 11 Plan.</u>

As set forth more fully in the Declaration of John Fischer (the "Fischer Declaration") filed in support of the Motion,  the funds to obtain the withdrawal with prejudice of the Desert Land DOA Claim come from funds allocated to the Busbin Trustee under the DOA Chapter 11 Plan.  I.e., the Settlement Agreement does not affect the DOA Chapter 11 Plan or its terms other than the Busbin Trustee has agreed to designate a portion of its plan distribution allocation to resolve the Class 5 claim of Desert Land.  As allowed by Section 5.3 of the DOA Chapter 11 Plan:

> "The Disbursing Agent may make subsequent distributions to the Gonzales Trust solely from the assets of the DOA Estate, provided that the Disbursing Agent maintains sufficient reserves to pay all other Claims against the DOA Estate that have been or may be Allowed."

As noted in Section 3.a. of the Settlement Agreement, the Busbin Trustee is **<u>directing</u>** that a partial distribution **to the Busbin Trustee** be paid by the Disbursing Agent to the Desert Land Trustee to pay for the compromise.  The Disbursing Agent is just being directed to whom to write the check for the Busbin Trustee's partial distribution on the Busbin Trustee's allowed claim.  Further the Busbin Trustee's payment results in the withdrawal of the Desert Land DOA Claim, which immediately decreases substantially the

2710961

funds necessary to maintain reserves as the Disbursing Agent will no longer have to reserve funds for the Desert Land DOA Claim.

Additionally, as also set forth in the Fischer Declaration, the proposed settlement has no effect upon what would occur as to the $425,000 in the event of a Reversal Event (as defined in the DOA Chapter 11 Plan). Nothing in the Settlement Agreement establishes or impairs any rights of any person or entity as to what is to occur upon a Reversal Event. The DOA Chapter 11 Plan's provisions that the effect of a Reversal Event shall be determined by the judgment or order creating Reversal Event still stands and is not affected by the Settlement Agreement. As stated in the plan at section 4.2.4:

> "4.2.4 If a Reversal Event occurs, the amount and priority of the Class 2 Claim shall be as determined in the judgment causing the Reversal Event to come into effect, and the amount of the Class 2 Claim shall be as determined by such judgment or final order or judgment of a court of competent jurisdiction establishing the amount of such claim."

Thus, there is nothing in the DOA bankruptcy case or the DOA Chapter 11 Plan that would justifiably impede approval of the Settlement Agreement.

A.    **Application of the *A&C Properties* Factors Demonstrates that the Settlement Agreement Should be Approved**

The Trustee has sufficiently evaluated the Settlement Agreement and has compared the benefits of entering into the Settlement Agreement as opposed to engaging in further litigation with the Parties. In evaluating the Settlement Agreement, the Trustee has reviewed the numerous documents and information available to him in this bankruptcy case and in the DOA bankruptcy case, including all records of the Debtor turned over to date and information received from the Parties, including related to the Desert Land DOA Claim and the objection to the Nuti Hart Final Fee App. Based on his evaluation, the Trustee has determined that entering into the Settlement Agreement is in the best interests of the estate because the Settlement Agreement is fair and equitable, is a reasonable and appropriate exercise of the Trustee's business judgment, and will avoid the time, expense, and risk inherent in continued litigation with the Parties on these issues.

The Trustee has evaluated the *A&C Properties* factors in exercising his business judgment as to whether to enter into the Settlement Agreement and has concluded that under these factors, the Settlement

9

Agreement should be approved.

1. <u>Probability of Success on the Merits</u>

In this case, the relevant inquiry on the "probability of success" factor is multi-faceted: (1) whether the Trustee will prevail on his objection to the Nuti Hart Final Fee App; (2) whether the Trustee will prevail on the Desert Land DOA Claim; and (3) whether the Disbursing Agent and/or the Busbin Trustee will prevail on an objection to the Desert Land DOA Claim.

As an initial matter, the Trustee, on the one hand, and the Disbursing Agent and Busbin Trustee, on the other hand, strongly disagree on the merits of the Desert Land DOA Claim.  The Trustee believes that he would ultimately be successful in obtaining an allowed claim against the DOA estate based on the Desert Land DOA Claim.  The Disbursing Agent and the Busbin Trustee have illustrated that they will vigorously contest the validity of the Desert Land DOA Claim and that they will file an objection to the claim.  The Trustee believes that litigation over the validity of the Desert Land DOA Claim would likely involve extensive and expensive litigation as it is fact intensive.

With respect to the objection to the Nuti Hart Final Fee App, the Trustee believes that the estate could incur significant administrative expense in connection with litigating this administrative claim and that a payment of up to $50,000 in full satisfaction of Nuti Hart's allowed chapter 11 claim will ultimately conserve estate resources.

The resolution of both the Desert Land DOA Claim and the fee application objection would provide a significant net benefit to the estate as it resolves most outstanding issues in this case.

The Trustee does not believe continuing litigation relating to the Desert Land DOA Claim and related to the objection to the fee application will benefit the estate, especially considering the favorable result to the estate if the Settlement Agreement is approved.  It is uncertain if continued litigation will result in a higher return to the estate than what is provided for in the Settlement Agreement.

With respect to the fee applications, Nuti Hart's agreement to accept payment of $50,000 (in addition to the $85,000 it has previously received) in full satisfaction of its chapter 11 administrative claim likely results in a net benefit to the estate as well versus continued pursuit of the objection.

2710961

1

2   **2.   Difficulty in Collection**

3   Without the Settlement Agreement, collection of an ultimately allowed Desert Land DOA Claim could be difficult due to the terms of the DOA Chapter 11 Plan.

4   With respect to the fee application, collectability is not a factor as it is merely a resolution of the

5   amount and payment of a chapter 11 administrative claim.

6   **3.   Complexity, Expense, and Inconvenience of Litigation**

7   The complexity, expense, and inconvenience of litigation with the DOA estate, the Busbin Trustee

8   and Nuti Hart weighs in favor of approving the Settlement Agreement.  Such litigation involves two

9   bankruptcy estates and a significant amount of the Bankruptcy Court's time and resources.  Continued

10  litigation results in a time delay of the administration of the DOA estate as well as this estate.

11  Furthermore, litigation relating to the aforementioned fee application (which is a chapter 11

12  administrative expense claim that will be paid on a pro rata basis) could be a large monetary cost to the

13  estate and a drain on the Court's resources (with little upside as continued litigation increases chapter 7

14  administrative costs – which then directly reduces the pro rata distribution to chapter 11 administrative

15  creditors).

16  Thus, the complexity, expense and inconvenience of litigation factored into the Trustee's decision

17  to enter in to the Settlement Agreement as opposed to continuing to litigate with the Parties.

18  **4.   Paramount Interests of Creditors**

19  The paramount interest of the creditors of this estate is best served by approving of the Settlement

20  Agreement.  "This factor is thus interwoven with considerations of expense, delay, and risk."  *In re*

21  *Marples,* 266 B.R. 202, 207 (Bankr. D. Idaho 2001).  Given the multitude of issues, litigation,

22  complexities and financial pressures, one could hardly argue that the Settlement Agreement "falls below

23  the lowest point in the range of reasonableness."  *In re W.T. Grant & Co.*, 699 F.2d at 608.

24  The Trustee believes that approval of the Settlement Agreement is in the best interests of creditors

25  because it provides for, among other things, (a) $425,000 in cash to be paid to the estate, (b) a significant

26  reduction in chapter 11 administrative expenses since Nuti Hart is agreeing to accept $50,000 in full

27

28

satisfaction of its chapter 11 administrative claim, and (c) a way for this bankruptcy case and the DOA bankruptcy case to be efficiently administered with all litigation resolved (and the creditors of both estates have been vocal about their preference for efficient administration).

If the Settlement Agreement were not approved and the Trustee was forced to litigate, there is a risk that there will not be any funds to pay to the estate's creditors because ongoing litigation could dissipate the estate's current cash reserves.  Over the past year, most of the remaining small creditors in this estate withdrew their claims or otherwise indicated that they would prefer that this case be dismissed or closed.  The largest general unsecured creditors in this case (including the Busbin Trustee) have represented to the Court that quick resolution of this case is of paramount importance to them.

## V.    **CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Court enter an order granting the Motion and:

1.    Approving the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure;

2.    Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and

3.    Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted.

DATED:   October 18, 2021

BRUTZKUS GUBNER


By: _/s/ Susan K. Seflin_____
      Jerrold L. Bregman
      Susan K. Seflin
Attorneys for Jeffrey I. Golden,
Chapter 7 Trustee for Desert Land, LLC

2710961

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into by and among Desert Oasis Apartments, LLC ("DOA") by Kavita Gupta, solely in her capacity as the Disbursing Agent under DOA's confirmed chapter 11 plan ("Disbursing Agent") and not individually or as an administrative creditor of Desert Land, LLC ("Desert Land") ; Desert Land by Jeffrey Golden solely in his capacity as the Chapter 7 Trustee for the Desert Land estate and not individually ("DL Trustee"); Bradley Busbin, as Trustee of the Gonzales Charitable Remainder Unitrust One ("Gonzales Trust"), and Nuti Hart LLP ("Nuti Hart"), solely in its capacity as an administrative creditor of DOA and Desert Land. Each of the above entities or persons are each a "Party" and collectively are the "Parties."

## RECITALS

A.      The provisions of this section are substantive and not intended as mere recitals.

B.      On April 30, 2018 ("Petition Date"), Brad Busbin, as Trustee of the Gonzales Charitable Reminder Unitrust One ("Gonzales Trust"), filed involuntarily petitions for relief under Chapter 7 of the Bankruptcy Code against DOA, Desert Oasis Investments, LLC, and Desert Land in the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court"), Case Nos. 18-12454, 18-12456, and 18-12457 ("Bankruptcy Cases").

C.      On June 28 and 29, 2018, the Bankruptcy Court granted a motion to convert the Bankruptcy Cases to Chapter 11.

D.      On March 21, 2019, the Bankruptcy Court ordered the appointment of a Chapter 11 trustee in each of the Bankruptcy Cases. The United States Trustee appointed Kavita Gupta to serve in that capacity on March 27, 2019. The Court entered an order confirming that appointment on April 2, 2019.

E.      Ms. Gupta resigned as Chapter 11 trustee in the case of Desert Land. On June 18, 2020, the Bankruptcy Court appointed the DL Trustee to serve as successor Chapter 11 trustee in the Desert Land case.

F.      The Bankruptcy Court entered orders approving the final fee applications of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and Aviva Gordon in the Desert Land case, which orders are final and non-appealable.

G.      The Desert Land bankruptcy case was converted from Chapter 11 to Chapter 7 on April 9, 2021. The DL Trustee was appointed to serve as Chapter 7 Trustee of the Desert Land bankruptcy estate.

H.      The DL Trustee filed a Proof of Claim in the bankruptcy case of DOA on September 23, 2020, designated in that case as Claim Number 3.1, in the amount of $78 million. Said proof of claim was subsequently amended on December 15, 2020 and designated as claim

2703079

**EXHIBIT 1_001**

number 3.2, in the amount of $4.5 million (the "Desert Land DOA Claim").

    I.    The DL Trustee asserts that the Desert Land DOA Claim is a valid claim. The Disbursing Agent and the Busbin Trustee dispute the validity of the Desert Land DOA Claim.

    J.    A Chapter 11 plan in the DOA bankruptcy case was confirmed and became effective as of July 1, 2021 (the "DOA Chapter 11 Plan"). The Busbin Trustee has an allowed claim in the DOA bankruptcy estate, which claim is subject to modification by, and the rights of the Busbin Trustee may become modified by, the occurrence of a Reversal Event as defined in and as provided for in the DOA Chapter 11 Plan.

    K.    The Desert Land DOA Claim and Nuti Hart's administrative fee claims in the DOA and Desert Land cases are the sole subject of this Agreement. For the avoidance of any doubt: (1) this Agreement has no impact or effect on the final orders approving the administrative claims of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and Aviva Gordon in the Desert Land case and/or the standing, rights, claims and defenses of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and Aviva Gordon in their capacity as administrative creditors in the Desert Land case; and (2) no provision of this Agreement shall apply to Ms. Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP or Aviva Gordon individually and/or in their capacity as administrative creditors of Desert Land.

    L.    The Parties have met and conferred by way of a mediation conference held on July 21, 2021, with the Hon. Judge Paul Sala ("Mediation Judge"), and in order to avoid the uncertainties and costs of litigation concerning the Desert Land DOA Claim and Nuti Hart's administrative fee claims in the DOA and Desert Land cases and as inducements for settlement of the foregoing disputes and in consideration of the mutual promises contained herein, the Parties have agreed to settle and resolve differences and disputes that exist or may exist between them as set forth herein.

### **AGREEMENT**

    **NOW, THEREFORE,** in consideration of mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

    1.    **Recitals**. The foregoing Recital paragraphs are incorporated herein by reference and the Parties agree that the facts recited therein are true and correct.

    2.    **Court Approval**.

        a.    Subject to paragraph 2.d., and except for this paragraph 2.a. and paragraph 3.c which shall be immediately effective, this Agreement is subject to the approval

**EXHIBIT 1_002**

of, and is of no force or effect until approved by, the Bankruptcy Court.

b.    Within ten (10) business days of receipt of a fully executed copy of this Agreement subject to the resolution of any disputes raised as to the form of such documents which could potentially extend such time period, the DL Trustee shall, after receiving approval of the Compromise Motion from the Disbursing Agent, the Busbin Trustee and Nuti Hart, which approval shall not be unreasonably withheld, conditioned or delayed, file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Compromise Motion") in the Desert Land case and provide notice of the Compromise Motion as required by Rule 2002 of the Federal Rules of Bankruptcy Procedure to creditors and parties in interest of the Desert Land estate.  The DL Trustee shall provide drafts of all filings related to the Compromise Motion  to counsel for the Disbursing Agent, counsel for the Busbin Trustee and Nuti Hart at least three (3) business  days prior to filing.  The Compromise Motion and all related documents filed with the Bankruptcy Court, including the order(s) approving this Agreement are subject to reasonable approval of the Disbursing Agent, the Busbin Trustee and Nuti Hart.  The Mediation Judge will resolve any differences between the Parties as to any disputed language in the draft Compromise Motion or related documents.  All Parties agree to support and to cooperate as reasonably requested or required to obtain approval of the Compromise Motion.

c.    Subject to paragraph 2.d. and paragraph 3.c., this Agreement shall become effective (the "Effective Date") on the date that the Bankruptcy Court order granting the Compromise Motion and approving this Agreement in its entirety becomes final and non-appealable (the "Final Order").[1]

d.    The Parties each agree that this Agreement shall constitute an offer to settle their disputes on the terms specified herein, and that such offers cannot be withdrawn or modified without the written consent of the all of the Parties for any reason prior to the Bankruptcy Court's entry of an order on the Compromise Motion.  The  offers shall be deemed terminated in the event that the Bankruptcy Court enters an order denying the Compromise Motion, or that refuses to approve all terms of this Agreement.

3.    **Resolution of the Desert Land DOA Claim and Nuti Hart's Administrative Claims in the DOA and DL Cases**.

---

[1]  For purposes hereof, "Final Order" means an order or judgment of the Court or other court of competent jurisdiction that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 (or any analogous rule) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

**EXHIBIT 1_003**

a.      The Disbursing Agent shall pay the DL Trustee the sum of $425,000 from the funds held by the estate of DOA which are attributable to and deducted from the distribution to the Busbin Trust under the DOA Chapter 11 Plan.  The Busbin Trustee consents to and directs the foregoing distribution to the DL Trustee.  The Disbursing Agent shall make the payment to the DL Trustee on or within five (5) business days after the order approving the Agreement and the Compromise Motion becomes a Final Order.

b.      The DL Trustee agrees to accept the payment of $425,000 from the estate of DOA, disbursed by the Disbursing Agent to the DL Trustee from funds held attributable to the claim of the Busbin Trustee under the DOA Chapter 11 Plan in full and final satisfaction of the Desert Land DOA Claim.  The order approving this Agreement and the Compromise Motion shall provide that upon the payment of $425,000 to the DL Trustee, the Desert Land DOA Claim shall be deemed withdrawn with prejudice without any further action required. Upon payment of the $425,000 to the DL Trustee said funds shall become an asset of the Desert Land estate. Notwithstanding the foregoing, the Disbursing Agent is authorized, but not required, to file a withdrawal of the Desert Land DOA Claim. The Parties agree that, whether or not such withdrawal is filed, the payment to the DL Trustee of the sum of $425,000 shall forever terminate, discharge, and release, with prejudice, the Desert Land DOA Claim.

c.      In its First Interim Application for Compensation and Expense Reimbursement [Doc. No. 146], Nuti Hart sought approval of payment by the DOA estate of approximately 80% of the fees, costs and expenses incurred by the three bankruptcy estates in relation to the auction of the estates' real properties (collectively the "Auction Fees"), asserting a disproportionate benefit of the auctions to the DOA estate. The bankruptcy court's order approving Nuti Hart's First Interim Fee Application [Doc. No. 184] allowed 33% of Auction Fees to be paid from the DOA estate, but left open the issue of a possible increase in the percentage of the Auction Fees to be paid by the DOA estate.  The Busbin Trustee and Nuti Hart stipulate and agree that no more than an additional $105,000 (in addition to the 33% of the Auction Fees previously approved) shall be sought from the DOA bankruptcy estate on account of the Auction Fees, and the Busbin Trustee will not object to and will approve payment of up to the additional sum of $105,000 for payment of Auction Fees to Nuti Hart from the DOA estate.

d.      While also a term in the settlement agreement for the adversary action against asserted insiders in the Desert Land bankruptcy, this Agreement also memorializes that the Nuti Hart fee application in the Desert Land bankruptcy case will be allowed in full (subject to any agreed upon reductions with the US Trustee or any other party), provided that Nuti Hart shall not receive more than $50,000 (which amount is in addition to the $85,000 Nuti Hart has already received in the Desert Land bankruptcy) from the Desert Land estate in full satisfaction of its allowed chapter 11 administrative claim in the Desert Land bankruptcy case.

4.      **No Admission.** Each Party to this Agreement acknowledges and agrees:

a.      That the facts and circumstances considered by the Parties in making this Agreement are subject to dispute; that this Agreement is not intended to conclusively establish the truth of any matter; and

2703079

**EXHIBIT 1_004**

       b.     That each Party expressly denies any liability to any other Party and to third parties.

      5.    **General Mutual Releases,** Each Party agrees to the following:

       a.     Except with respect to rights and obligations set forth in this Agreement and (1) the Disbursing Agent's continuing duties and obligations under the confirmed DOA Chapter 11 Plan and (2) the DL Trustee's (or any successor trustee's) continuing duties and obligations as trustee of the Desert Land estate, the Busbin Trustee, on behalf of the Gonzales Charitable Remainder Unitrust One, and its current agents, representatives, successors, assigns, heirs, personal representatives, and executors, hereby releases Kavita Gupta in her capacity as the Chapter 11 trustee of DOA and Desert Land, the Disbursing Agent and the DL Trustee, and each of them, and all of their respective agents, attorneys, representatives, employees, successors, assigns, heirs, devisees, personal representatives, and each and all of them with respect to actions taken, or not taken, prior to the date of the full execution of this Agreement (i) by or on behalf of Ms. Gupta in her former capacity as the Chapter 11 trustee for DOA and Desert Land, (ii) by or on behalf of the Disbursing Agent, and (iii) by or on behalf of the DL Trustee in his former capacity as the Chapter 11 trustee of Desert Land and as the Chapter 7 trustee of Desert Land, in each case from any and all claims, debts, liabilities, demands, obligations, costs, expenses, attorneys' fees, actions, and cause or causes of action of every nature, character, and description that the Busbin Trustee has held, now holds, or will hold, whether known or unknown, against the above releasees.  Without limiting the generality of the foregoing, said release applies to all claims asserted in, arising from or related to the DOA and Desert Land bankruptcy estates, and includes all injuries and damages to person or property whatsoever, including economic injuries whether such injuries and damages are known or unknown, foreseen or unforeseen, and whether they are patent, latent, or occur later.  Notwithstanding anything in this paragraph 5.a. or anything in any other provision of this Agreement that may be to the contrary, the releases in this paragraph and any language in any other provision of this Agreement shall not in any way (x) release, affect, or impair the Busbin Trustee's claims filed in the DOA and Desert Land estates or affect or impair the implementation of a Reversal Event (as referenced in recital J); or (y) prevent any Party to this Agreement from pursuing any remedies arising from events occurring after the execution of this Agreement in regards to any improper, incorrect or unauthorized administration of any part or aspect of the DOA and/or the Desert Land estates.

       b.     Except with respect to rights and obligations set forth in this Agreement and the Disbursing Agent's continuing duties and obligations under the confirmed DOA Chapter 11 Plan arising on or after execution of this Agreement until the sum referenced in paragraph 3.a is paid, the DL Trustee, on behalf of debtor Desert Land, LLC and its estate, and its current agents, representatives, successors, assigns, heirs, personal representatives, and executors, hereby releases Kavita Gupta in her former capacity as the Chapter 11 trustee of DOA and Desert Land, the Disbursing Agent and the Busbin Trustee, and each of them, and all of their respective agents, attorneys, representatives, employees, successors, assigns, heirs, devisees, personal representatives, and each and all of

**EXHIBIT 1_005**

them, with respect to actions taken, or not taken, by or on behalf of Ms. Gupta in her former capacity as the Chapter 11 trustee of DOA and Desert Land, the Disbursing Agent and the Busbin Trustee, from any and all claims, debts, liabilities, demands, obligations, costs, expenses, attorneys' fees, actions, and cause or causes of action of every nature, character, and description that DL Trustee has held, now holds, or will hold, whether known or unknown, against the above releasees. Without limiting the generality of the foregoing, said release applies to all claims asserted in, arising from or related to the DOA and DL bankruptcy estates, and includes all injuries and damages to person or property whatsoever, including economic injuries whether such injuries and damages are known or unknown, foreseen or unforeseen, and whether they are patent, latent, or occur later. For the avoidance of doubt, the releases granted by the DL Trustee, on behalf of debtor Desert Land and its estate, includes, and constitutes the grant of releases, of any and all claims, of any type or nature, against Kavita Gupta in her former capacity as trustee of the estate of Desert Land and her attorneys and agents while acting as the trustee of the Desert land bankruptcy estate, or on behalf of the former trustee of the Desert Land bankruptcy estate.

      c.     Except with respect to rights and obligations set forth in this Agreement, and the DL Trustee's continuing duties and obligations as trustee of the Desert Land estate, the Disbursing Agent, on behalf of the DOA estate, and its current agents, representatives, successors, assigns, heirs, personal representatives, and executors, hereby releases the DL Trustee and the Busbin Trustee, and each of them, and all of their respective agents, attorneys, representatives, employees, successors, assigns, heirs, devisees, personal representatives, and each and all of them, with respect to actions taken, or not taken, by or on behalf of the DL Trustee and the Busbin Trustee, from any and all claims, debts, liabilities, demands, obligations, costs, expenses, attorneys' fees, actions, and cause or causes of action of every nature, character, and description that the Disbursing Agent, on behalf of the DOA estate, has held, now holds, or will hold, whether known or unknown, against the above releasees. Without limiting the generality of the foregoing, said release applies to all claims asserted in, arising from or related to the DOA estate, and includes all injuries and damages to person or property whatsoever, including economic injuries whether such injuries and damages are known or unknown, foreseen or unforeseen, and whether they are patent, latent, or occur later.

      d.     Each of the Parties expressly waives "unknown claims", which means any and all released claims which any of the Parties do not know of or suspect to exist in his, her or its favor at the time the releases called for in this Agreement become effective, i.e. the Effective Date, and which if known by him, her or it might have affected his, her or its decision(s) with respect to the settlement and this Agreement. With respect to any and all released claims, the Parties agree that upon entry of the Final Order, the Parties shall expressly waive, and each Party shall be deemed to have, and by operation of the Final Order shall have, expressly waived any and all provisions, rights and benefits conferred by any law, or principle of common law, which is similar, comparable, or the equivalent to Cal. Civ. Code § 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

2703079

**EXHIBIT 1_006**

e.    Notwithstanding any of the releases set forth above, the Parties explicitly agree that this Agreement and none of said releases shall in any way affect, impair, discharge, release any standing, claims, rights or defenses existing: (i) on behalf of any of the parties in Adversary Case Number 19-01108-gs (i.e., the Busbin Trustee, The Northern Trust Company, and the Shotgun Entities (as defined in said adversary action) and in any appeals related thereto; and (ii) on behalf of Kavita Gupta, Garman Turner Gordon, LLP, Grobstein Teeple, LLP and Aviva Gordon in their capacity as administrative creditors in the Desert Land case and/or the final orders approving their administrative claims in the Desert Land case.

6.    **Advice of Counsel.** The Parties acknowledge that they have read and considered this Agreement carefully, that it was negotiated with their express approval, that they have discussed it with their attorneys, that they have been given a reasonable period of time to consider this Agreement before signing, that they fully understand the extent and impact of its provisions, and that they have executed it knowingly and voluntarily and without any coercion, undue influence, threat, or intimidation of any kind whatsoever.

7.    **Entire Agreement.**  No Party or any officer, agent, employee, representative, or attorney of or for any Party has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and no Party relies upon any statement, representation, or promise of any other party or of any representative, agent, employee, officer, or attorney of any other Party, in executing this Agreement, or making the settlement provided for herein, except as expressly stated in this Agreement.  This Agreement constitutes the entire agreement among the Parties. This Agreement is intended to and shall be enforceable notwithstanding any change in law, any reinterpretation of the law, and if any Parties' interpretation of the law turns out to be incorrect.

8.    **Restriction on Modifications**. It is expressly understood and agreed that this agreement may not be altered, amended, modified, or otherwise changed by authorized representatives of each of the Parties hereto, unless by a signed writing specifying that it amends this Agreement. The Parties hereto agree and acknowledge that they will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character. This Agreement may not be altered, amended, or extinguished, except by a writing executed by all of the Parties to this Agreement (or their successors-in-interest) that expressly refers to this Agreement.

9.    **Authority to Sign.** Each person signing this Agreement represents and warrants and (s)he is duly authorized to do so and to thereby bind the Party on whose behalf she/he is signing, and in the case of the DL Trustee the subject representation and warranty is subject to the Bankruptcy Court's approval of this Agreement.  The Parties acknowledge that they have had an opportunity to consult with counsel regarding the terms of this Agreement.

10.    **No Assignment,** Each Party warrants and represents to the other Parties that: (a) the releasing Party is the sole and lawful owner of all rights, title, and interest in the

**EXHIBIT 1_007**

claims and liens which he, she, or it is releasing; and (b) the releasing Party has not voluntarily, by operation of law or otherwise assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate, any of the claims or liens which he, she, or it is releasing.

11.     **No Reliance: Independent Investigation**. The undersigned agree that each Party hereto in entering into this Agreement relies upon his/her/its own investigation and judgment in regard to all matters herein contained and that they have not relied on any representations made by the other parties except as expressly set forth herein, that this Agreement is made and entered into by each of the parties of its own volition, and each of the parties hereto warrants that this Agreement was made and entered into free of any duress, coercion, or undue influence from any source whatsoever.

12.     **Further Assurances**. The Parties shall execute all such documents and take all such actions as may be necessary and reasonable to effect the consummation of this Agreement and the transactions contemplated by this Agreement. Each Party agrees to take no action to hinder, delay, or frustrate the consummation of this Agreement and the transactions contemplated by this Agreement.

13.     **Attorneys' Fees.**  The Parties agree to bear their own attorneys' fees and costs in connection with the preparation of this Agreement and approval by the Bankruptcy Court.  However, in any dispute arising out of or in connection with the interpretation, performance, or enforcement of this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs from the other Party.

14.     **Counterparts and Signatures**. This Agreement may be executed in duplicate originals, each of which shall be equally admissible in evidence. The Agreement shall become effective when all Parties have signed the same or separate copies thereof. A facsimile signature or signature transmitted by email in ".pdf" format shall be deemed to have the same effect as an original, "wet" signature.

15.     **Successors and Assigns.** This Agreement is binding upon and shall inure to the benefit of the parties hereto, their respective agents, employees, representatives, officers, divisions, directors, subsidiaries, affiliates, assigns, heirs and successors, including any successor trustee in the DOA or Desert Land bankruptcy cases.

16.     **No Presumption Against Drafter.** For purposes of interpretation of the Agreement in the event of an ambiguity in any term or provision in the Agreement, no Party shall be deemed to have drafted this Agreement, but, instead, the Agreement shall be deemed to have been drafted by all Parties hereto.

17.     **Time.**  Time is of the essence.

18.     **Miscellaneous**. As used in this Agreement, the masculine, feminine, or neuter gender, or the singular or plural number, shall be deemed to include the other whenever the text so indicates. Captions and paragraph headings are inserted solely for

**EXHIBIT 1_008**

convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

19.    **Choice of Law.** This Agreement shall be construed and enforced pursuant to the laws of the State of Nevada, as well as applicable United States bankruptcy law.

20.    **Choice of Forum; Personal Jurisdiction,** Subsequent to the Effective Date, the Parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the United States Bankruptcy Court for the District of Nevada. The Parties expressly submit to the personal jurisdiction of the United States Bankruptcy Court for the District of Nevada for the purpose of litigation of all such claims and disputes and consent to entry of final judgment by the Bankruptcy Court with respect to this Agreement and all related matters.  Prior to execution of this Agreement, the Parties agree that the Mediation Judge shall have the sole authority to make final and binding determinations ("Decisions") as to any disputes regarding this Agreement or the terms and conditions as set forth herein.  In connection therewith the Parties hereby waive any and all rights to appeal the Decisions of the Mediation Judge.

In Witness Whereof, the Parties have approved and executed this Agreement on the dates beside their signatures below.

READ AND SIGNED AND AGREED TO THIS 20th DAY OF SEPTEMBER, 2021

> THE ESTATE OF DESERT OASIS
> APARTMENTS, LLC
>
> By:_____
> Kavita Gupta, solely in her capacity as the
> Disbursing Agent under the confirmed DOA
> Chapter 11 Plan, not individually or an
> administrative creditor or Desert Land,
> LLC

READ AND SIGNED AND AGREED TO THIS 20th DAY OF SEPTEMBER, 2021 [Except as to Paragraph 3(c) which does not involve the DL Trustee or the Desert Land estate]

> THE ESTATE OF DESERT LAND, LLC
>
> By:_____
> Jeffrey I. Golden, solely in his capacity as
> the Chapter 7 Trustee for the Estate of
> Desert Land, LLC and not individually

Settlement Agreement Page **9** of **10**

EXHIBIT 1_009

convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

19.    **Choice of Law.** This Agreement shall be construed and enforced pursuant to the laws of the State of Nevada, as well as applicable United States bankruptcy law.

20.    **Choice of Forum; Personal Jurisdiction.** Subsequent to the Effective Date, the Parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the United States Bankruptcy Court for the District of Nevada. The Parties expressly submit to the personal jurisdiction of the United States Bankruptcy Court for the District of Nevada for the purpose of litigation of all such claims and disputes and consent to entry of final judgment by the Bankruptcy Court with respect to this Agreement and all related matters.  Prior to execution of this Agreement, the Parties agree that the Mediation Judge shall have the sole authority to make final and binding determinations ("Decisions") as to any disputes regarding this Agreement or the terms and conditions as set forth herein.  In connection therewith the Parties hereby waive any and all rights to appeal the Decisions of the Mediation Judge.

In Witness Whereof, the Parties have approved and executed this Agreement on the dates beside their signatures below.

READ AND SIGNED AND AGREED TO THIS 24th DAY OF SEPTEMBER, 2021

THE ESTATE OF DESERT OASIS APARTMENTS, LLC

By: _Kavita Gupta_____
Kavita Gupta, solely in her capacity as the Disbursing Agent under the confirmed DOA Chapter 11 Plan, not individually or an administrative creditor or Desert Land, LLC

READ AND SIGNED AND AGREED TO THIS 20th DAY OF SEPTEMBER, 2021 [Except as to Paragraph 3(c) which does not involve the DL Trustee or the Desert Land estate]

THE ESTATE OF DESERT LAND, LLC

By:_____
Jeffrey I. Golden, solely in his capacity as the Chapter 7 Trustee for the Estate of Desert Land, LLC and not individually

2703079

**EXHIBIT 1_010**

READ AND SIGNED AND AGREED TO THIS 20th DAY OF SEPTEMBER, 2021

GONZALES CHARITABLE REMAINDER
UNITRUST ONE

By:

Bradley Busbin, as Trustee of the Gonzales
Charitable Remainder Unitrust One

AGREED SOLELY AS TO PARAGRAPHS 2a, 2b, 2c, 2d, 3c, 3d and 6 to 20, inclusive, OF
THIS AGREEMENT

READ AND SIGNED THIS 20th DAY OF SEPTEMBER, 2021

NUTI-HART, LLP

By:_____

Name:_____

Title:_____

Settlement Agreement Page **10** of **10**

2703079

**EXHIBIT 1_011**

READ AND SIGNED AND AGREED TO THIS 20th DAY OF SEPTEMBER, 2021

GONZALES CHARITABLE REMAINDER
UNITRUST ONE

By:_____

       Bradley Busbin, as Trustee of the Gonzales
       Charitable Remainder Unitrust One

AGREED SOLELY AS TO PARAGRAPHS 2a, 2b, 2c, 2d, 3c, 3d and 6 to 20, inclusive, OF
THIS AGREEMENT

READ AND SIGNED THIS 20th DAY OF SEPTEMBER, 2021

NUTI-HART, LLP

By: *Kevin Coleman*
Name:_____ Kevin Coleman _____
Title:_____ Senior Counsel _____

2703079

**EXHIBIT 1_012**

STEVEN T. GUBNER – Nevada Bar No. 4624
JERROLD L. BREGMAN – *Pro Hac Vice* granted
SUSAN K. SEFLIN – *Pro Hac Vice* granted
BRUTZKUS GUBNER
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile:   (866) 995-0215
Email:   sgubner@bg.law
            jbregman@bg.law
            sseflin@bg.law
Counsel for Jeffrey I. Golden,
Chapter 7 Trustee for Desert Land, LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 18-12454-GS<br>Chapter: 7 |
| DESERT LAND, LLC, | |
| Debtor. | **PROPOSED ORDER GRANTING CHAPTER 7 TRUSTEE JEFFREY GOLDEN'S MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>Hearing Date: November 18, 2021<br>Hearing Time: 1:30 p.m. |

Upon consideration of the motion (the "Motion") filed by Jeffrey Golden, solely in his

capacity as the Chapter 7 Trustee for the estate of Desert Land, LLC ("Desert Land"), for approval,

pursuant to Bankruptcy Rule 9019, of the Settlement Agreement and Mutual Release attached to

1

EXHIBIT 2_001

the Motion as Exhibit 1 (the "Settlement Agreement")[1] between Jeffrey Golden, not individually,

but solely in his capacity as the Chapter 7 Trustee of Desert Land (the "Trustee"), on the one hand,

and on the other hand, (i) Desert Oasis Apartments, LLC  ("DOA") by Kavita Gupta, solely in her

capacity as the disbursing agent ("Disbursing Agent") under DOA's confirmed chapter 11 plan and

not individually or as an administrative creditor of Desert Land, (ii) Bradley Busbin, as Trustee

("Busbin Trustee") of the Gonzales Charitable Remainder Unitrust One ("Busbin Trust"), and (iii)

Nuti Hart LLP ("Nuti Hart"), solely in its capacity as an administrative creditor of DOA and

Desert Lan; and it further appearing that the relief requested in the Motion is due and proper and in

accordance with applicable law, including that the evidence submitted in support of the Motion

establishes that the settlement embodied in the Settlement Agreement is fair, reasonable, and

adequate, and meets each of the factors set forth in *In re A & C Properties*, 784 F. 2d 1377 (9th

Cir. 1986), in that the settlement constitutes a fair compromise of uncertain claims and defenses;

avoids substantial litigation costs; and is in the best interests of creditors; and it further appearing

that notice of the Motion provided was due and proper under the circumstances; and upon due

deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED, ADJUDGED AND DECREED** as follows:

     1.     The Motion is hereby **GRANTED** in all respects and as further set forth herein.

     2.     The Settlement Agreement which is attached as Exhibit 1 to the Motion (and

incorporated herein), is hereby **APPROVED**, inclusive, without limitation, of each of the terms

and provisions thereof, without limitation, notwithstanding that such terms and provisions are not

separately restated herein.

     3.     Any objection, opposition, or response to the settlement ("Settlement") embodied

in the Settlement Agreement that is not resolved by the terms of this Order or by a statement

announced on the record of the hearing on the Motion, and that is not otherwise withdrawn,

waived, or settled, is hereby overruled and denied.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Motion.

2

**EXHIBIT 2_002**

4.     Any findings of fact and conclusions of law announced by the Court at the hearing on the Motion in relation to approval of the terms of the Settlement, shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014, and are incorporated herein by reference and are expressly made part of this Order.

5.     The Settlement Agreement (a) was negotiated in good faith and is fair and equitable, (b) contemplates an immediate resolution of all disputes between the settling parties on terms favorable to Desert Land and its estate; (c) avoids litigation that could prove to be protracted and expensive; and (d) is in the best interests of Desert Land and its estate, resolving issues between the settling parties without the incurrence of additional expense and being in the best interest to the creditors of the estate.

6.     Within five (5) days after this Order becomes a Final Order, the Disbursing Agent shall pay the Trustee $425,000 from the funds held by the estate of DOA which are attributable to and deducted from the distribution to the Busbin Trust under the DOA Chapter 11 Plan.

7.     Upon payment of the $425,000 set forth in paragraph 6, (a) the Desert Land DOA Claim shall be deemed withdrawn with prejudice without any further action required, and (b) the Desert Land DOA Claim shall be terminated, discharged and released, with prejudice.

8.     This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

**IT IS SO ORDERED.**

3

EXHIBIT 2_003

Prepared and Submitted By:


BRUTZKUS GUBNER

By:    /s/
       Steven T. Gubner
       Susan K. Seflin
       Attorneys for Jeffrey I. Golden,
       Chapter 7 Trustee for Desert Land, LLC

Approved by:

LAW OFFICES OF JOHN FISCHER


By:   /s/
      John Fischer
      Attorneys for Brad Busbin, Trustee of the Gonzales
      Charitable Remainder Unitrust One



PACHULSKI STANG ZIEHL & JONES LLP


By:   /s/
      John D. Fiero
      Special Counsel for Kavita Gupta, Solely in Her Capacity as the
      Disbursing Agent under DOA's Confirmed Chapter 11 Plan


NUTI HART LLP


By:   /s/
      Kevin W. Coleman
      Attorneys for Administrative Creditor Nuti Hart LLP

4

EXHIBIT 2_004